# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| STEPHEN ARY, | : Case No. 3:18-cv-00258 |
| --- | --- |
| Plaintiff, | : |
| vs. | : District Judge Walter H. Rice |
|  | : Magistrate Judge Sharon L. Ovington |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : |
| Defendant. | : |

## REPORT AND RECOMMENDATIONS[1]

## I. Introduction

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a disability, among other eligibility requirements. A disability in this context refers to "any medically determinable physical or mental impairment" that precludes an applicant from engaging in "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

Plaintiff s Steven Ary applied for Disability Insurance Benefits and Supplemental Security Income in September 2013, asserting his disability started on May 1 2008 and continued thereafter. After preliminary denials of his applications, Administrative Law

---
[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

Judge Mark Hockensmith held a hearing and later denied Plaintiff's applications based on his conclusion that he was not under a disability. (Doc. #6, *PageID* #s 924-37). Upon appeal of that decision to this Court, the parties stipulated to a remand for further administrative proceedings.

After a second hearing before ALJ Hockensmith, during which Plaintiff testified (for a second time), ALJ Hockensmith again found Plaintiff not disabled and again denied his applications. (Doc. #6, *PageID* #s 728-40).

Plaintiff brings the present case contending (in part) that ALJ Hockensmith erred by rejecting the opinions of psychological examiner Giovanni M. Bonds, Ph.D., and by relying on a vocational expert's testimony "to qualify limitations in the residual functional capacity." (Doc. #7, *PageID* #7). Rather than a remand for further proceedings, Plaintiff seeks a remand for payment of benefits. The Commissioner finds no error in the ALJ's decision and asks the Court to affirm.

**II.     Background**

On his asserted disability onset date, Plaintiff was forty-four years old—a younger person under social security law. In the first half of 2014, he turned age fifty, thus becoming a person "closely approaching advanced age." He has a high-school education and has worked in the past as a machinist and an assistant press operator.

Plaintiff testified during an administrative hearing before ALJ Hockensmith that he stopped working because of his mental impairments, especially his difficulty in getting overwhelmed around people and when communicating with people. (Doc. #6, *PageID* #73). He sometimes had difficulty just being around his grandchildren. Plaintiff further testified

2

that he cannot work due to breathing problems and excruciating nerve pain in his legs and back. *Id*. at 78. He also has neuropathy in his feet due to diabetes.

Plaintiff has undergone on-and-off mental-health treatment at TCN Behavioral Health Services. *Id*. at 337-89, 412-54, 458-97, 626-62, 682-96.

A psychological assessment of Plaintiff in 2009 resulted to diagnoses of an anxiety disorder, polysubstance dependence and assigned a GAF score of 50. *Id*. at 348. (The GAF scale was still in vogue at that time.) Plaintiff's treatment at TCN focused on both his diagnoses. *Id*. at 348, 451. He experienced racing thoughts and difficulty sleeping. Despite receiving treatment for several months, he was ultimately discharged for non-participation. *Id*. Plaintiff briefly returned to TCN in 2012 for substance-abuse treatment after being arrested for trespassing. *Id*. at 427.

Plaintiff received treatment at TCN for a third time in July 2013 which continued through the date of his first administrative hearing in June 2015. *Id*. at 429. He sought help for increasing problems with depression and anxiety. He reported restlessness, getting inadequate sleep, and problems weathering social interactions. *Id*. During treatment, Plaintiff described his symptoms as worse when around others. He was forgetful and he felt as though he "can't shut off his brain." *Id*. at 484. He felt, "energy-shaky inside." *Id*. Abnormalities seen during a mental status examination included an anxious/depressed mood, a restricted affect, poor concentration, and/or limited insight/judgment. *Id*. at 489-90, 530, 642, 647-58, 694.

Plaintiff last attended a diagnostic assessment at TCN in January 2018. *Id*. at 1245-56. During the assessment, he reported that the medications prescribed by his primary care

3

physician were not helping his anxiety and depression. *Id*. at 1246. He said he felt "depressed a lot of the time" and had little interest in activities. *Id*. at 1251. "[He] has no energy, often feels worthless, and hopeless, and sad." *Id*. Weekly panic attacks afflicted him, and he was diagnosed with depressive and general anxiety disorders. *Id*. at 1255.

In November 2013, psychologist Dr. Bonds examined Plaintiff at the request of the Ohio Bureau of Vocational Rehabilitation. By that time, Plaintiff had been homeless for at least three years. He stayed with either of his two sons or his girlfriend or his friend. He told Dr. Bonds that for several years, he had experience problems with anxiety, depression, memory loss, chronic obstructive pulmonary disease, nerve pain in his back and leg, and pain in his feet from diabetes. *Id*. at 498.

Dr. Bonds observed that Plaintiff's mood seemed depressed. Plaintiff told Dr. Bonds that he felt very depressed almost every day. Dr. Bonds noted, "He expressed feelings of worthlessness and helplessness…. [He] reported that he is easily angered but he does not lash out at people when he gets angry. Instead he withdraws and stays to himself…." *Id*. at 501. Dr. Bonds also described Plaintiff as "very nervous during the interview. He sat on the edge of his seat. He frequently bounced his legs. He was squeezing his hands together and he bit his fingernails. He stated that he is nervous and worried all the time. He is worried about where he is going to live and how he is going to eat…." *Id*.

Dr. Bonds reported that Plaintiff took the Minnesota Multiphasic Personality Inventory-2 (MMPI-2). "His results indicate that he is experiencing severe distress which he is openly acknowledging and he perceives himself as having limited personal resources.

4

His results are considered valid and interpretable." *Id*. at 504. Dr. Bonds described other alarming test results:

> [Plaintiff's] MMPI-2 clinical profile is indicative of a person who is chronically worried, tense, and agitated. He is socially uncomfortable and has poor social skills and judgment. He has difficulty forming close personal relationships and usually is withdrawn, isolated and introverted. These characteristics exacerbate his obsessive ruminations. This is a person who is a constant worrier. He is depressed, guilt ridden and obsessively preoccupied with his personal deficiencies. Suicidal ideation is likely and should be assessed and monitored with this individual…. Further evaluation for a thought disorder is suggested by these results.

*Id*. at 504.

Dr. Bonds diagnosed Plaintiff with generalized anxiety disorder and dysthymic disorder. *Id*. at 506. She opined that Plaintiff "is best suited currently for some type of low stress position in which he works with very few people and mostly works alone. His efforts to seek employment however may need to be delayed until his anxiety and depression are brought under better control and decreased." *Id*.

Thirteen months later, Dr. Bonds answered interrogatories. She stated that the combination of Plaintiff's psychological and physical symptoms reduces his ability to concentrate, persist on task, and perform work consistently. *Id*. at 664. She explained:

> The sense of hopelessness and helplessness that are a part of depression affects the ability to cope with pain and to accept and adjust to changes in bodily functioning. Also the obsessive ruminating about his problems contributes to increased somatic tension and psychophysiological stress responses in the body.

*Id*. at 665. Dr. Bonds thought that Plaintiff could not withstand the pressure of meeting normal standards of work productivity without the risk of psychological or physiological decompensation. *Id*. at 665-66. She supported this opinion by stating, "Frustration/stress

5

tolerance is low and symptoms are likely to worsen under stressful working conditions." *Id*. at 666. Dr. Bonds also believed that Plaintiff would not be able to behave in an emotionally stable manner or demonstrate reliability during a normal workday. *Id*. at 665-67. She opined, however, that Plaintiff would be able to maintain concentration and attention for two-hour periods of time. But she tempered this opinion, writing, "If he is doing simple, routine, repetitive tasks in an area where he works alone, he is more likely to be able to concentrate." *Id*. at 667.

Dr. Bonds concluded—based on her clinical findings during her November 2013 evaluation, her diagnoses of Generalized Anxiety Disorder, Dysthymic Disorder, and Plaintiff's then GAF of 50[2]—Plaintiff would be off task twenty percent of the time. *Id*. at 670. And, in the end, Dr. Bonds reported, "At this time, [Plaintiff] does not seem stable enough to participate in vocational rehabilitation. After he has made some gains in terms of decreased anxiety and depression and increased ability to handle stress, then he should resume his efforts to return to work." *Id*. at 507.

In December 2013, psychologist Leslie Rudy, Ph.D., examined the record—including Dr. Bonds' November 2013 evaluation—for the Ohio Bureau of Disability Determinations. She believed that Plaintiff was moderately limited in his ability to complete a normal workday and workweek due to his difficulty with his "processing speed per test result. He can carry out 1-4 step tasks that do not have strict time or production requirements." *Id*. at

---

[2] A GAF (Global Assessment of Functioning) of 50 indicates a person with serious symptoms or serious impairment in social, occupational, or school functioning. *See* Diagnostic and Statistical Manual of Mental Disorders-TR, p. 34 (4th Edition, Text Revision 2000). The latest edition of this Manual (DSM V) does not include the GAF scale.

6

*PageID* #130. She thought that Plaintiff was markedly limited in his ability to interact appropriately with the general public; moderately limited in his ability to accept instructions and criticism from supervisors; and moderately limited his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes." *Id*.

Dr. Bonds opined that Plaintiff was not significantly limited in his ability to maintain socially appropriate behavior or maintain neatness and cleanliness. She reasoned that although Plaintiff endorses problems with anxiety in public settings, he spends time with his girlfriend, he was cooperative during Dr. Bonds' exam, and he can interact in setting where public contact is not required, and contact with coworkers and supervisors is superficial. *Id*. at 131. In February 2014, Aracelis Rivera, Psy.D., reviewed the record and repeated Dr. Rudy's opinions. *Id*. at 146-48.

Neither Dr. Lesley nor Dr. Rudy had the benefit of the information and opinions Dr. Bonds provided in her later-issued (in 2014) interrogatory answers.

### III. Standard of Review and ALJ Hockensmith's Decision

Review of ALJ Hockensmith's decision considers whether he applied the correct legal standards and whether substantial evidence supports his findings. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance…." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Lawson v. Comm'r of Soc. Sec.*, 3:17cv119, 2018 WL 3301421, at *4 (S.D. Ohio 2018) (Ovington, M.J.), *Report & Recommendations adopted*, 2018 WL 3549787, at *1 (S.D. Ohio 2018) (Rice, D.J.).

The ALJ reviewed the evidence and evaluated Plaintiff's disability status under a each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. §§ 404.1520, 416.920.[3] His more pertinent findings began at step two where he found that Plaintiff had severe impairments—degenerative disc and joint disease of the spine, chronic obstructive pulmonary disease, chronic liver disease, anxiety disorder, depressive disorder, and a history of polysubstance abuse. At step three the ALJ found that Plaintiff's impairments did not automatically qualify him for benefits. (Doc. #6, *PageID* #s 731-33).

At step four, the ALJ concluded that the most Plaintiff could do (his residual functional capacity, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002)), consists of "light work" with thirteen limitations. He found, for example:

> (1) no climbing of ladders, ropes, or scaffolds… (7) no more than simple, routine tasks; (8) in a static work environment with few changes in routine; (9) new tasks would require demonstration or repeated instructions and changes would require some supervisory support not lasting more than 30 days; (10) no fast paced production quotas; (11) no direct dealing with the public; (12) occasional and superficial contact with coworkers and supervisors (supervisors would retain the ability to check in on the worker and provide some feedback on an occasional basis); and (13) no tandem tasks or collaborative work.

*Id*. at 733.

The ALJ concluded at step five that there were many full-time jobs Plaintiff could perform. These main findings led the ALJ to ultimately conclude that Plaintiff was not under a disability and not eligible to receive Disability Insurance Benefits or Supplemental Security Income.

---

[3] Further citations to social security regulations will identify the pertinent Disability Insurance Benefits regulation with full knowledge of the corresponding Supplemental Security Income regulation.

## IV. Discussion

Plaintiff finds fault with the ALJ's evaluation of Dr. Bonds' opinions and the opinions of Drs. Rudy and Rivera. Some applicable law will lead the way to Plaintiff's specific arguments.

Medical evidence in social security cases typically includes medical records and opinions provided by physicians or psychologists. The Social Security Administration ranks the validity of medical opinions in general terms, explaining, "Generally, we give more weight to the medical opinions of a source [physician or psychologist] who has examined you than to the medical opinion of a … source who has not examined you." 20 C.F.R. § 404.1527(c)(1); *see Rogers*, 486 F.3d at 242. The Administration further explains, "Generally, we give more weight to medical opinions from your treating sources …." *See* 20 C.F.R. § 404.1527(c)(2). "In the hierarchy of opinions, the opinion of a non-examining physician is entitled to the least weight." *Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002) (citing *Lashley v. Sec'y of HHS*, 708 F.2d 1048 (6th Cir. 1983); *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980)).

"The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." *Gayheart v. Comm'r of Social Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (citation omitted).

In the present case, the record does not contain a treating psychologist or psychiatrist's opinions. Consequently, in the preset case, Dr. Bonds—a one-time examiner—stands atop the hierarchy, while Drs. Rudy and Rivera—non-examining record reviewers—stand lower on the hierarchy. *See id; see also Gayheart v. Comm'r of Soc. Sec.*,

9

710 F.3d 365, 376 (6th Cir. 2013) (discussing 20 C.F.R. § 404.1527 and Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996)).

The hierarchy, however, is only the starting point. "The Commissioner … weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling. Other factors 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion. *Gayheart*, 710 F.3d at 376 (quoting, in part, 20 C.F.R. § 404.1527(c)).

In the present case, the ALJ weighed Dr. Bonds' opinions as follows:

> The report and opinion provided by Dr. Bonds in conjunction with a vocational rehabilitation consultation in 2013, as well as the responses to interrogatories propounded by the claimant's representative in 2014, were considered and given some weight to the extent that they were based on in-person mental status examination and objective testing (Exhibits 5F and 14F); however, this was a one-time examination and the opinions rendered are at times internally inconsistent, so they were not given great weight. Notably, Dr. Bonds indicates at various points that the claimant is capable of certain forms of work, particularly if his symptoms improve (which they did, as noted previously), and then alternatively states that he would be unable to handle typical work situations. Similarly, Dr. Bonds indicates that the claimant has only moderate levels of functional limitation, but then indicates that he would be off task 20% of the workday and would not be stable enough to participate in vocational rehabilitation. The numerous equivocations by Dr. Bonds in Exhibits 5F and 14F renders it difficult to give any more than limited weight to the opinions, particularly as the claimant has shown improvement in his mental health with treatment.

(Doc. #6, *PageID* #s 737-38).

The ALJ erred by discounting Dr. Bonds' opinions based on the fact that she performed "a one-time examination." *Id*. at 737. To the extent the ALJ viewed Dr. Bonds' status as a one-time examiner to support discounting her opinions makes sense only when

10

compared with the opinions provided by a treating medical source, of which there were none, or if a treating psychologist or multi-time examiner had provided opinions contrary to Dr. Bonds. It would then be relevant to the evaluation of Dr. Bonds' opinions that she examined and evaluated Plaintiff only once.

Even if this was not error, the ALJ failed to realize that Dr. Bonds' one-time examination should have been generally given more weight than the opinions of the record-reviewing consultants Drs. Rudy and Rivera. Because they never saw or examined Plaintiff, their opinions generally fell below Dr. Bonds' opinion on the hierarchy of medical-source opinions. *See* 20 C.F.R. §404.1527(c)(1) ("Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you."). By discounting Dr. Bonds' opinion because she was an examiner while elsewhere assigning great weight to the opinions of non-examiners, ALJ Hockensmith inverts the regulatory-opinion-weighing hierarchy.

ALJ Hockensmith also erred in his description of Dr. Bonds' opinions as "internally inconsistent" and therefore undeserving of significant weight. For example, the ALJ argues it is inconsistent that Dr. Bonds would find Plaintiff unable to handle particular work situations while elsewhere indicating that Plaintiff could perform certain types of work given better control of his symptoms. Yet Dr. Bonds actually found Plaintiff much less able to work. She wrote, "At this time Steven does not seem stable enough to participate in vocational rehabilitation. After he has made some gains in terms of decreased anxiety and depression and increased ability to handle stress, then he should resume his efforts to return to work." *Id*. at 507. Contrary to ALJ Hockensmith's findings, there is no inconsistency

11

whatsoever to be found here as Plaintiff's potential ability to "resume his efforts to return to work" at some indefinite point in the future where his anxiety and depression might be better managed is not at all inconsistent with Dr. Bonds' identification of disabling limitations for the period of time before any such hypothetical improvement.  And it was unreasonable for ALJ Hockensmith to reject Dr. Bonds' opinions based on the idea that Plaintiff's conditions had improved without both identifying when such improvement took place and issuing separate residual functional capacity findings for the pre- and post-improvement periods of alleged disability.

ALJ Hockensmith further errs in finding Dr. Bonds' identification of disabling symptoms inconsistent with his belief that the psychologist elsewhere "indicates that the claimant has only moderate levels of functional limitation." *Id*. at 737-38.  While Dr. Bonds indicated "moderate" limitations in the broader functional domains relevant to considering Plaintiff's mental impairments under the Commissioner's listings (i.e. the paragraph B criteria), that in no way negates the specific functional restrictions she elsewhere identified in her report. *See id*. at 664-70.  This is because the paragraph B criteria do not themselves directly correlate with discrete functional limitations considered when assessing a claimant's residual functional capacity.  Consequently, Dr. Bonds' ratings of Plaintiff's paragraph B do reasonably support the ALJ's rejection of her opinions as they relate to Plaintiff's residual functional capacity.

Lastly, the ALJ did not notice that Drs. Rudy and Rivera examined only eight exhibits present in the administrative record at the time of their review in December 2013 and February 2014, respectively.  This fact was particularly significant given their general

12

status at the lowest level of medical-source-opinion hierarchy. *See Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016) ("Where the non-examining source did not review a complete case record, we require some indication that the ALJ at least considered these facts before giving greater weight to an opinion from the non-examining source. (citation and quotation marks omitted)).

Accordingly, for all the above reasons, Plaintiff's Statement of Errors is well taken.[4]

## V. Remand

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence 4 may result in the need for further proceedings or an immediate award of benefits.

---

[4] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other challenges to the ALJ's decision is unwarranted.

*E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

This is an unusual case that requires a remand for further proceedings even though the evidence of disability is strong while contrary evidence is lacking. First the evidence: Dr. Bonds' report and her opinion that Plaintiff would be off-task twenty percent of the workday stands essentially unrefuted because the non-examiners Dr. Rudy and Rivera reviewed a record that was far from complete in December 2013 and February 2014. Yet Dr. Bonds also opined that Plaintiff's work abilities would improve with concomitant improvement in the severity of his symptoms. As discussed above, substantial evidence does not support the ALJ's finding that such improvement occurred. There is, moreover, evidence that Plaintiff has sporadically engaged in drug or alcohol abuse and unsuccessful substance-abuse treatment, which tends to show periods of decompensation and which no ALJ has considered.

Despite such evidence, there has been no administrative decision about whether Plaintiff's episodic substance abuse is "a contributing factor material to the Commissioner's determination that [he] is disabled." 42 U.S.C. § 423(d)(2)(C).

> The Commissioner's regulation explains that "[t]he key factor" in determining whether drug or alcohol abuse is material in a given case is whether the claimant would still be disabled if he or she stopped using drugs or alcohol. 20 C.F.R. § 404.1535. Substance abuse is not considered until the Commissioner first makes a finding that a claimant is disabled. *See id.* ("If we find that you are disabled...we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.").

*Gayheart*, 710 F.3d at 380. The ALJ did not examine whether Plaintiff's substance abuse was material probably because he found that Plaintiff was not under a disability.

Although there is strong evidence that Plaintiff is under a disability and contrary evidence is lacking, a remand for an award of benefits is not warranted due to the absence of a determination at the administrative level of whether Plaintiff's substance abuse is "a contributing factor material to the Commissioner's determination that [he] is disabled." 42 U.S.C. § 423(d)(2)(C). However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration for this determination. *See id.; see also Gayheart*, 710 F.3d at 380.

### IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability decision on May 29, 2018 be vacated;

2. A finding be made that Plaintiff Steven Art is under a "disability"; yet, rather than an award of benefits at this time, this matter be REMANDED to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and Recommendations, and any decision adopting this Report and Recommendations; and

3. The case be terminated on the Court's docket.

September 3, 2019     *s/Sharon L. Ovington*
                       Sharon L. Ovington
                       United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).